**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BANILLA GAMES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. |
| v. | ) | |
| | ) | |
| KALPAN AMIN, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff, Banilla Games, Inc. ("**Banilla**" or "**Plaintiff**"), by counsel, states the following

as its Complaint against Defendant, Kalpan Amin ("**Amin**" or "**Defendant**").

**NATURE OF THE CASE**

1.      Over the last decade, Banilla has firmly established itself as a prominent leader in

the skill-based gaming and amusement industry. Banilla is widely recognized for its innovation

and commitment to quality, attributes that have earned the company a strong reputation among

distributors, route operators, players, and industry participants alike. Banilla markets its flagship

suite of video gaming systems under the "FUSION" brand ("**FUSION Games**"). Banilla has

invested substantial time, effort, and resources in developing and protecting its brand and

intellectual property, including the FUSION Games, and is committed to safeguarding these

valuable assets.

2.      This is a civil action arising from Defendant's willful and deliberate infringement

of Banilla's intellectual property rights, including, but not limited to, its exclusive rights in and to

the FUSION brand of video gaming systems. Defendant has engaged in the unauthorized purchase,

use, distribution, sale, placement, vending, marketing, and/or public display of Banilla's products

and exploitation of the following trademarks owned by Banilla (collectively, the "**Banilla Marks**"):

    a.    the federally registered BANILLA GAMES trademark and BANILLA GAMES stylized trademark (the "**BANILLA GAMES Marks**");

    b.    the federally registered CRUMBLE CAVE trademark (the "**CRUMBLE CAVE Mark**");

    c.    the federally registered PLUNDERIN' PIRATES word mark and PLUNDERIN' PIRATES stylized design mark (the "**PLUNDERIN' PIRATES Marks**");

    d.    the federally registered OFFSHORE ANGLER trademark (the "**OFFSHORE ANGLER Mark**");

    e.    the federally registered TERROR TAVERN trademark (the "**TERROR TAVERN Mark**"); and

    f.    the federally registered GORGON TREASURES OF GREECE trademark (the "**GORGON TREASURES OF GREECE Mark**").

Defendant's conduct violates Banilla's exclusive rights in the Banilla Marks.

3.    Banilla asserts claims for trademark counterfeiting and infringement under Section 32(1) of the Lanham Act,[1] 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and related claims of unfair competition and trademark infringement under the statutory and common law of the Commonwealth of Pennsylvania.

---

[1] Hereinafter, the term "Lanham Act" refers to 15 U.S.C. §§ 1051 *et seq*.

4. The Banilla Marks, which are inherently distinctive and have acquired substantial secondary meaning in the marketplace, signify to consumers the high quality and origin of Banilla's products in the various nudge, skill, redemption, and amusement game markets, are valid, protectable, and enforceable under federal and state law.

5. Banilla brings claims for copyright infringement pursuant to the United States Copyright Act of 1976, as amended (the "**Copyright Act**"), 17 U.S.C. § 101 *et seq*. These claims arise from Defendant's unauthorized purchase, distribution, sale, placement, vending, marketing, public display, and/or commercial exploitation of counterfeit FUSION Games, which reproduce, copy, and are substantially similar to—and therefore, infringe—Banilla's copyrighted works. Banilla seeks all remedies available under the Copyright Act, including, but not limited to, preliminary and permanent injunctive relief, recovery of Banilla's actual damages and Defendant's profits attributable to the infringing conduct or statutory damages, and such other monetary and equitable relief as the Court deems just and proper.

6. Banilla's copyrights registrations are valid, subsisting, and enforceable.

7. These intellectual property assets embody the substantial goodwill and reputation that Banilla has developed over many years through continuous use in commerce, and they belong exclusively to Banilla.

**THE PARTIES**

8. Banilla is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business in Greenville, Pitt County, North Carolina. Banilla creates, designs, develops, and manufactures software, artwork, and audiovisual effects for various electronic games in various markets, including, but not limited to, the skill-based redemption market.

9.      Amin is an individual who, upon information and belief, resides within this judicial district at 9130 Mather Street, Philadelphia, Pennsylvania 19115. At all relevant times, Amin has been engaged in, among other things, the unauthorized use, reproduction, sale, distribution and/or commercial exploitation of counterfeit products purporting to be genuine Banilla products. These counterfeit products infringe upon Banilla's intellectual property rights, including its federally registered trademarks and copyrighted works, and Amin has profited and continues to profit from the unauthorized use and commercial exploitation of Banilla's protected intellectual property, as more fully described herein.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over the claims in this action that arise under the Lanham Act and Copyright Act pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

11.     This Court has supplemental jurisdiction over Banilla's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy and arise from a common nucleus of operative facts.

12.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as Banilla and Defendant are citizens of different states and the claims asserted herein exceed $75,000.00, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendant because, on information and belief, Defendant resides in Pennsylvania and in this district, has operated, distributed, or placed infringing products within this Commonwealth and this district and has otherwise established contacts within this Commonwealth and this district sufficient to permit the exercise of general and specific jurisdiction.

14.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Banilla's claims occurred in this district, and under the provision of 28 U.S.C. § 1400(a) because Defendant resides in this district.

## FACTUAL ALLEGATIONS

### I.    BANILLA'S BUSINESS AND INTELLECTUAL PROPERTY

15.    Since 2013, Banilla has invested millions of dollars in the development of its high-quality and reliable electronic games of skill. Multiple teams of dedicated in-house personnel, acting within the scope of their employment, develop, from scratch, all design and software components of the FUSION Games. These components include, but are not limited to, the games' source code, object code, two-dimensional and other artwork, static images, and other visual and audiovisual effects that contribute to the distinctive and enjoyable user experience of the FUSION Games. All the artwork, static images, and audiovisual effects in the FUSION Games are original—i.e., created by the in-house game design teams—and none of that artwork, static images, and audiovisual effects are copied from any third-party source in the creation of these products.

16.    Banilla manufactures and distributes a variety of skill-game and amusement devices, including the FUSION-branded devices, which are currently in their sixth iteration.

17.    Banilla serves as the exclusive distributor of the FUSION Games. Through Banilla's distribution efforts, the FUSION Games, including the Copyrighted Works (as defined below), are made available to customers, who in turn, place the FUSION Games in their respective places of business.

18.    To obtain the FUSION Games, including the Copyrighted Works (as defined below), an individual or business must purchase the FUSION Games directly from Banilla or from

an authorized reseller to whom Banilla has sold legitimate FUSION Games. No other channel of distribution is authorized by Banilla.

19.    Banilla has invested substantial time, effort, and resources in developing, marketing, and distributing the FUSION Games to its customers and providing exemplary customer service to those customers who purchase legitimate copies of the FUSION Games.

20.    Banilla's FUSION Games are highly regarded by Banilla's customers (e.g., the operators who purchase the games) and end users (e.g., the individuals who play the games), all of whom have come to associate the FUSION Games and the Banilla Marks with high-quality products and superior customer service from Banilla.

21.    Banilla continues to invest heavily in the development and protection of its intellectual property and has consistently and vigorously protected and enforced those rights.

22.    In furtherance of its brand-building efforts, Banilla has used the BANILLA GAMES Marks in commerce throughout the United States continuously since at least February 6, 2014. The BANILLA GAMES Marks have been used in connection with the manufacture, distribution, offering for sale, sale, marketing, advertising, and promotion of products in the board, nudge, skill, redemption, and amusement game markets.

23.    Banilla is the owner of the intellectual property rights in the software for the FUSION Games, which consists of a series of game suites. These intellectual property rights include multiple federal copyright registrations issued by the United States Copyright Office for the computer files and associated audiovisual effects used in the FUSION line of video games, including, but not limited to, the following:

- Number PA0002206908, obtained on October 11, 2019, for Banilla's FUSION video game (the "**Fusion Copyrighted Work**"). [2]

- Number PA0002218349, obtained on October 11, 2019, for Banilla's FUSION 2 video game (the "**Fusion 2 Copyrighted Work**").

- Number PA0002218347, obtained on October 11, 2019, for Banilla's FUSION 3 video game (the "**Fusion 3 Copyrighted Work**").

- Number PA0002293309, obtained on May 24, 2021, for Banilla's FUSION 4 video game (the "**Fusion 4 Copyrighted Work**"). [3]

- Number PAu004088597, obtained on May 24, 2021, for Banilla's FUSION 5 video game (the "**Fusion 5 Copyrighted Work**").[4]

- Number PA0002559762, obtained on September 22, 2025, for Banilla's FUSION 6 video game (the "**Fusion 6 Copyrighted Work**").

- Number PA0002368424, obtained on July 19, 2022, for Banilla's FUSION Link video game (the "**Fusion Link Copyrighted Work**").[5]

- Number PA0002589123, obtained on March 13, 2026, for Banilla's FUSION Plus video game (the "**Fusion Plus Copyrighted Work**"). [6]

Banilla also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles, including, as relevant here: the game title "Crumble Cave," Number VA0002173744, obtained on October 11, 2019 (the "**Crumble Cave Copyrighted Work**"); [7] the

---

[2] Attached hereto as **Exhibit 1**.
[3] Attached hereto as **Exhibit 2**.
[4] Attached hereto as **Exhibit 3**.
[5] Attached hereto as **Exhibit 4**.
[6] Attached hereto as **Exhibit 5**.
[7] Attached hereto as **Exhibit 6**.

game title "Plunderin' Pirates," Number PA0002533777, obtained on March 19, 2025 (the "**Plunderin' Pirates Copyrighted Work**");[8] the game title "Terror Tavern," Number PA0002551216, obtained on June 13, 2025 (the "**Terror Tavern Copyrighted Work**");[9] the game title "Offshore Angler," Number PA0002537346, obtained on March 27, 2025 (the "**Offshore Angler Copyrighted Work**");[10] and the game title "Topshot Golf," Number PA0002551916, obtained on June 26, 2025 (the "**Topshot Golf Copyrighted Work**");[11] and the game title "Gorgon: Treasures of Greece," Number PA0002551204, obtained on June 13, 2025 (the "**Gorgon Copyrighted Work**"). [12] Hereinafter, the above copyright works will be referred to collectively as the "**Copyrighted Works**."[13]

24.    In addition, Banilla has continuously used trademark "FUSION" Mark in commerce throughout the United States and in Pennsylvania since at least as early as February 2017, in connection with the creation, distribution, offering for sale, sale, marketing, and promotion of its FUSION Games, including the Copyrighted Works at issue (the "**FUSION Mark**"). in this action. Attached hereto as **Exhibit 12** are representative samples of materials evidencing Banilla's use of the FUSION Mark in connection with the FUSION Games.

---

[8] Attached hereto as **Exhibit 7**.
[9] Attached hereto as **Exhibit 8**.
[10] Attached hereto as **Exhibit 9**.
[11] Attached hereto as **Exhibit 10**.
[12] Attached hereto as **Exhibit 11**.
[13] Banilla also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles including, but not limited to: the game title "Bourbon Street Dice," Number VA0002184888, obtained on October 11, 2019 (the "**Bourbon Street Dice Copyrighted Work**"); the game title "Ticket to Ride," Number VA0002184964, obtained on October 11, 2019 (the "**Ticket to Ride Copyrighted Work**"); and the game title "Vegas Magic," Number VA0002184972, obtained on October 11, 2019 (the "**Vegas Magic Copyrighted Work**"). Hereinafter, the copyright registrations for these game titles will be referred to collectively as the "**Copyrighted Games**."

25. Since their introduction, the FUSION Games have become among the most popular and widely recognized skill games available in the United States, enjoying widespread recognition and use by players, locations, route operators, and resellers. *See, e.g.,* https://banillagames.com/product-category/platforms/skill-games/fusion-series/; *see also* https://banillagames.com/product-category/platforms/skill-games/fusion-link/. As a result of Banilla's longstanding and continuous use of the FUSION Mark, and the consistently high quality of its goods and services offered thereunder, the FUSION Mark has acquired substantial secondary meaning and become widely known throughout the United States, including in Pennsylvania. The FUSION Mark is closely and exclusively identified with Banilla and represents substantial and valuable goodwill belonging to Banilla.

26. By virtue of its widespread, continuous, and exclusive use of the FUSION Mark to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify Banilla as the single source of origin of those products, Banilla owns valid, protectable, and subsisting statutory and common law rights in and to the FUSION Mark.

27. Banilla is the owner of the following valid and subsisting United States Trademark Registrations on the Principal Register of the United States Patent and Trademark Office ("**USPTO**"):

    a. "BANILLA GAMES," Registration No. 7,187,483, which registration issued on October 10, 2023, as shown in **Exhibit 13**.

    b. "BANILLA GAMES (stylized w/ bananas)," Registration No. 7,187,484, which registration issued on October 10, 2023, as shown in **Exhibit 14**.

    c. "CRUMBLE CAVE," Registration No. 8,157,384, which registration issued on March 3, 2026, as shown in **Exhibit 15**.

d.      "PLUNDERIN' PIRATES," Registration No. 8,095,915, which registration issued on January 6, 2026, as shown in **Exhibit 16**.

e.      "PLUNDERIN' PIRATES (stylized)," Registration No. 8,202,393, which registration issued on April 7, 2026, as shown in **Exhibit 17**.

f.      "OFFSHORE ANGLER," Registration No. 8,174,554, which registration issued on March 17, 2026, as shown in **Exhibit 18**.

g.      "TERROR TAVERN," Registration No. 7,994,942, which registration issued on October 21, 2025, as shown in **Exhibit 19**.

h.      "GORGON TREASURES OF GREECE," Registration No. 8,174,555, which registration issued on March 17, 2026, as shown in **Exhibit 20**.

28.     Banilla has used the BANILLA GAMES word mark and the BANILLA GAMES (stylized w/ bananas) design mark in interstate commerce in the United States continuously since at least as early as February 6, 2014, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

29.     Banilla has used the CRUMBLE CAVE Mark in interstate commerce in the United States, including Pennsylvania, continuously since at least as early as April 26, 2017, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

30.     Banilla has used the PLUNDERIN' PIRATES Marks in interstate commerce in the United States, including Pennsylvania, continuously since at least as early as August 16, 2019, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing,

10

advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

31. Banilla has used the OFFSHORE ANGLER Mark in commerce throughout the United States, including Pennsylvania, continuously since at least as early as May 18, 2021, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

32. Banilla has used the TERROR TAVERN Mark in commerce throughout the United States, including Pennsylvania, continuously since at least as early as May 18, 2021, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

33. Banilla has used the GORGON TREASURES OF GREECE Mark in interstate commerce in the United States, including Pennsylvania, continuously since at least as early as July 13, 2023, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

34. As a result of the widespread, continuous, and exclusive use of the Banilla Marks in interstate commerce to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify and distinguish Banilla as the source of those products, Banilla owns valid and subsisting federal statutory and common law rights in and to the Banilla Marks.

35. Banilla has made significant investments of time and resources in promoting and marketing its goods and services provided under the Banilla Marks. As a direct result of Banilla's

11

continuous and exclusive use and promotion of the Banilla Marks in connection with its goods and services, Banilla has developed and now owns substantial and valuable goodwill symbolized by and associated with the Banilla Marks.

36.    As a direct result of these efforts, the goodwill and recognition that Banilla has established in the Banilla Marks have enabled Banilla to achieve substantial sales of its products in the board, nudge, skill, redemption, and amusement game markets under the Banilla Marks throughout the United States.

37.    The Banilla Marks are inherently distinctive and/or have acquired strong secondary meaning among both the consuming public and the relevant trade, including participants in the skill-based redemption game market.

38.    As a direct result of its significant investment in the promotion and marketing of the FUSION Games, Banilla has become recognized as a global leader in the electronic gaming industry. As a global leader, Banilla diligently protects its business and products through comprehensive intellectual property enforcement measures, including the registration of copyrightable works with the United States Copyright Office, registration of trademarks and service marks with the United States Patent and Trademark Office, protection of trade secrets, and other measures designed to safeguard its intellectual property rights. As a result of these efforts, Banilla has developed and owns substantial and valuable good will associated with the Banilla Marks.

## II.    DEFENDANT'S COUNTERFEITING AND INFRINGING ACTIVITIES

*Copyright Infringement and Defendant's Knowledge*

39.    Banilla is the exclusive distributor of the FUSION Games. Banilla sells FUSION Games to commercial operators and other end users, who, in turn, deploy and operate the FUSION Games in their places of business.

40.    Through its own investigation conducted on or about June 20, 2026, and continuing through the present, Banilla discovered that Defendant has purchased, distributed, offered for sale, placed, vended, marketed, publicly displayed, and/or commercially exploited at least ten (10) counterfeit, pirated, or hacked versions of the Fusion Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion Link Copyrighted Work, the Fusion Plus Copyrighted Work, the Crumble Cave Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work and allowed or intended to allow such counterfeit and unauthorized games to be used by his customers and purchasers (i.e., end users).

41.    After learning of Defendant's offering of counterfeit and/or unauthorized versions of the Copyrighted Works, Plaintiff exercised reasonable diligence to investigate and verify that Defendant's infringing conduct was occurring and ongoing.

42.    Upon information and belief, Defendant has purchased, sold, distributed, publicly displayed and/or otherwise commercially exploited all the unauthorized, pirated, and/or hacked versions of the Copyrighted Works and Copyrighted Games on the secondary market (the "**Illicit Games**"). Neither the cabinets in which the Illicit Games were housed, if any, nor the Illicit Games themselves were created, sold, or authorized or licensed by Banilla.

43.    Upon information and belief, Defendant has purchased, sold, and/or vended additional Illicit Games, or has the means, motive, and opportunity to obtain, distribute, and commercially exploit additional Illicit Games.

13

44.    Upon information and belief, Defendant continues to offer for sale, sells, and/or vends additional Illicit Games or has the means, motive, and opportunity to obtain, distribute, and exploit additional Illicit Games on the secondary market, including game boards that have not been manufactured, sold, authorized, or licensed by Banilla.

45.    The hacked/pirated/counterfeit Illicit Games are sold for significantly less than genuine products. A genuine game board for the Fusion 4 Game, for example, costs $4,995.00 and a full game board and cabinet costs approximately $10,000.00. Upon information and belief, Defendant paid significantly less for the Illicit Games and is offering the Illicit Games for sale at a price of significantly lower than a genuine game board for a brand-new game board.

46.    This scheme allows Defendant to undercut Banilla's market share, divert Banilla's profits, and increase Defendant's own profits at Banilla's expense. By purchasing Illicit Games at a substantially lower price, Defendant can maximize his profits by receiving a larger portion of gross revenue, and ultimately secure locations that would otherwise use Banilla's legitimate machines.

47.    Defendant's Illicit Games are substantially similar to the Copyrighted Works and Copyrighted Games, in that they present the same game play and substantially similar artwork. However, the Illicit Games perform at slower speeds than the Copyrighted Works, and the Illicit Games display dimmer, lower-quality artwork than that found in the Copyrighted Works. Additionally, the game board that runs the Illicit Games is designed in a completely different manner from Banilla's genuine game boards.

48.    Banilla owns all right, title, and interest in and to the copyrights covering the audiovisual effects that tie together the artwork used in the Copyrighted Works, and in this instance (as far as Plaintiff is presently aware), the Fusion Copyrighted Work, the Fusion 4 Copyrighted

14

Work, the Fusion 5 Copyrighted Work, the Fusion Link Copyrighted Work, and the Fusion Plus Copyrighted Work, which effects depict a series of related images that, when shown in a sequence, impart an impression of motion and the expression fixed in motion.

49.    In addition, Banilla owns all right, title, and interest in and to the copyrights covering the individual game titles "Crumble Cave," which is incorporated into the Fusion Copyrighted Work; "Plunderin' Pirates," which is incorporated into the Fusion 4 Copyrighted Work; "Terror Tavern," "Offshore Angler," and "Topshot Golf," which are incorporated into the Fusion 5 Copyrighted Work; and "Offshore Angler" and "Gorgon: Treasures of Greece," which are incorporated into the Fusion Plus Copyrighted Work.

50.    The Copyrighted Works are wholly original works of authorship, and Banilla is the sole and exclusive owner of all right, title, and interest in and to the Copyrighted Works and the owner of all the exclusive rights associated with those Copyrighted Works, including, but not limited to, the right to reproduce its software in copies and to distribute those copies to the public. Additionally, 17 U.S.C. § 106(5) provides Banilla, as copyright holder for "motion picture or other audiovisual works," the exclusive right to display the work publicly.

51.    Without Banilla's authorization, consent, or knowledge, and without any compensation to Banilla, Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit reproductions of the Copyrighted Works. Specifically, Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit versions of the Fusion Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion Link Copyrighted Work, the Fusion Plus Copyrighted Work, the Crumble Cave Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore

15

Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work.

52.    Defendant is purchasing, distributing, selling, placing, vending, marketing, publicly displaying, and/or commercially exploiting the Illicit Games across the country, in an effort to replicate, or copy, the market footprint Banilla has spent years, and millions of dollars, developing.

53.    Indeed, by purchasing, distributing, publicly displaying, and/or making available for game play Illicit Games, Defendant has induced, and continues to induce, locations that may have previously operated legitimate Banilla Copyrighted Works to remove those works and replace them with Illicit Games. Defendant's conduct in distributing and promoting Illicit Games as substitutes for Banilla's genuine products directly and proximately causes locations to displace legitimate Banilla Copyrighted Works with infringing copies, thereby depriving Banilla of the revenue, goodwill, and market presence to which it is entitled as the owner of valid and subsisting copyrights and trademarks in the Banilla Copyrighted Works. Defendant knew, or should have known, that his distribution and promotion of Illicit Games would cause, and have in fact caused, locations to substitute Illicit Games for legitimate Banilla Copyrighted Works, resulting in ongoing and irreparable harm to Banilla.

*Trademark Infringement*

54.    Banilla also owns the BANILLA GAMES Marks, which appear at the start-up of each FUSION Game, and which are inherently distinctive, arbitrary and fanciful, and/or have developed significant secondary meaning, and are entitled to the broadest scope of protection.

55.    Without authorization from Banilla, Defendant has used, likely among others, the Banilla Marks, or counterfeit and unauthorized imitations thereof that are confusingly similar to

consumers and end users (the "**Infringing Marks**"), in commerce within the United States, in connection with the marketing, distribution, and operation of the Illicit Games.

56. Defendant's Illicit Games are marketed as, among other types, skill games, and distributed in skill game markets, just as Banilla markets and distributes. Indeed, the target market for both Banilla's products and services and Defendant's products and services are identical, namely distributors and route operators, who will then make such games available to end users who play the games.

57. Defendant's infringing acts, as alleged herein, have caused and are continuing to cause confusion, mistake, and deception among the relevant consuming public as to the source of origin of Defendant's game boards and have and are continuing to deceive the relevant consuming public into believing, mistakenly, that Defendant's game boards originate from, are associated or affiliated with, or otherwise authorized by Banilla.

58. Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and to its valuable reputation and goodwill with the consuming public for which Banilla has no adequate remedy at law.

59. Defendant's Illicit Games are confusingly similar to authentic FUSION Games sold and distributed by Banilla, differing primarily in the speed of game play, the quality of the displayed artwork, and the internal design of the game board.

60. Each time an Illicit Game is placed, publicly displayed, or put into operation, and each time such a machine is started, Defendant employs the Infringing Marks.

61. Defendant's infringing actions, as alleged herein, have caused, or are likely to cause, confusion, mistake, and deception among the relevant consuming public (e.g., consumers and end users) as to the source, sponsorship, or affiliation of the Illicit Games, falsely suggesting

17

an association with or endorsement by Banilla and deceiving the relevant consuming public into believing, mistakenly, that the Illicit Games originate from, are associated or affiliated with, or otherwise authorized by Banilla. The prominent uses of FUSION Games are made with the intent to trade on the goodwill associated with the Banilla Marks.

62.    Defendant's uses create the false impression that his goods and services originate from Banilla, or that Banilla is somewhat connected or associated with, or sponsors, Defendant's goods and services, so as to deceive customers or to cause confusion or mistake as to the origin or affiliation of Defendant's and Banilla's goods and services.

63.    Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and to its valuable reputation and goodwill with the consuming public for which Banilla has no adequate remedy at law.

*Damages from Copyright and Trademark Infringement*

64.    As a result of Defendant's actions, Banilla has been damaged, and continues to be damaged, by the unauthorized publication and public display of counterfeit versions of the Copyrighted Works, including, but not limited to, the Fusion Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion Link Copyrighted Work, the Fusion Plus Copyrighted Work, the Crumble Cave Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work. Furthermore, Banilla has been damaged, and continues to be damaged by Defendant's unauthorized use of the Infringing Marks.

65.    Defendant has never accounted to or otherwise paid Banilla for his improper, illegal, and unauthorized use of counterfeit versions of the Copyrighted Works or the Banilla Marks.

18

66.    Defendant's acts are causing, and, unless enjoined by this Court, will continue to cause damage and immediate irreparable harm and ongoing damages to Banilla, for which Banilla has no adequate remedy at law.

67.    Upon information and belief, Defendant's infringement has been and continues to be willful, intentional, and with reckless disregard for Banilla's rights, entitling Banilla to enhanced damages.

68.    Upon information and belief, Defendant is intimately familiar with the cost of legitimate Banilla products and readily recognize the Banilla brand and the distinguishing characteristics of legitimate Banilla products, including the Copyrighted Works, the Copyrighted Games, and the Banilla Marks at issue in this action. Accordingly, Defendant is fully aware that the Copyrighted Works, the Copyrighted Games, and the Banilla Marks are successful games and titles connected to a successful brand in the relevant marketplace.

69.    Indeed, the FUSION line of games is a well-known and commercially successful product line, popular among operators, locations, and players alike. Exploiting this demand, Defendant deliberately selected his counterfeit offerings to capitalize on the established consumer goodwill and demand for Banilla's FUSION products. In other words, Defendant is intentionally targeting Banilla's most recognizable and highest demand products to maximize his own sales, placements, and profits at Banilla's expense.

70.    The reason Defendant chose to source his computer boards containing infringing software from a Chinese manufacturer is simple: Defendant sought game boards containing the most popular games at the lowest possible cost.

71.    It is well known in the industry that "branded" products sold on Chinese e-commerce platforms are rarely legitimate, licensed products. Indeed, more than one (1)

commentator warns of the dangers and the downside to businesses sourcing branded products from such platforms. For example, one blog post warns:

> When browsing on Aliababa.com you can find merchandise of all kinds and therefore *you may end up buying products protected by intellectual property*.
>
> In order to purchase these items [as legitimate, licensed products], the manufacturer will need a special agreement with the [IP] holder and will then have to pay the fixed or ongoing fees for each [licensed] item [that the manufacturer sells].
>
> *In China, most suppliers have no such [license] agreement*, but they still [sell] these products without the [IP] owner's approval.
>
> Let's take for example a shirt with Mickey Mouse on it, we all know that he is a Disney character and that therefore his image is protected by intellectual property and cannot be reproduced without the permission of the company.
>
>       \*          \*          \*
>
> *Buying products [protected by] intellectual property is illegal and the fault lies with the importer, which is you.*
>
> Once stopped at customs, these products are seized and a fine is issued to the importer which could also incur more serious criminal consequences.
>
> The advice is to stay away from this type of products, and *check* with the patent directories *that you can actually sell the products you chose*.

"Is Alibaba legit? How to avoid scams and buy your products safely (emphasis added); available at https://yakkyofy.com/blog/aliexpress-and-other-chinese-ecommerce-en/is-alibaba-legit-how-to-avoid-scams-and-buy-your-products-safely/.

72.      Similarly, one digital brand protection company cautions that:

> [A]ny branded product on Alibaba is cause for alarm and it is recommended that companies don't buy *branded products on Alibaba* since they *are almost always fake*.
>
>       \*           \*          \*
>
> It is generally advised to avoid branded products on Alibaba. This is because they are more than likely to be replicas, <u>counterfeit goods</u>, or non-delivery scams. *Brands usually have a list of partners on*

> *their websites, so if you do find a branded product, check the*
> *original brand's website*.

"Alibaba scams: The must-read guide for brands" (Some emphasis in original; some emphasis added); *available at* https://www.redpoints.com/blog/alibaba-scams/.

73.     Upon information and belief, Defendant knew not only the cost of a legitimate Banilla product, but is also aware of the distinguishing characteristics of a legitimate Banilla product.

74.     Defendant has willfully and deliberately obtained, upon information and belief, a significant quantity of counterfeit games—Illicit Games—that infringe on the Banilla Marks, Copyrighted Works, Copyrighted Games, and Banilla's goodwill.

75.     Defendant's conduct has caused, and unless enjoined, will continue to cause, Banilla to suffer lost profits and irreparable harm to its goodwill.

76.     Consumers likely will associate Defendant's Illicit Games with Banilla because, *inter alia*, Defendant's Illicit Games mimic in every way the experience provided by the FUSION Games.

77.     Defendant has engaged in an unfair method of competition and unfair trade practice. In fact, Defendant is intentionally "passing off" or "palming off" his Illicit Games as if they were authentic, or otherwise authorized, Banilla products in order to cause confusion among consumers as to the source, sponsorship, or approval of such goods, while capitalizing on Banilla's stellar and established reputation for quality products and service.

78.     Defendant's conduct is causing, and, unless enjoined by this Court, will continue to cause, immediate and irreparable harm and damage to Banilla, for which Banilla has no adequate remedy at law.

21

79.     Upon information and belief, Defendant's conduct is willful and undertaken with the deliberate intent to trade on Banilla's goodwill, to cause confusion and deception in the marketplace, and to divert sales from Banilla's authentic FUSION Games to Defendant.

**COUNT I**
**Copyright Infringement Pursuant to 17 U.S.C. §§ 106, 501**

80.     Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

81.     The Copyrighted Works and the incorporated Copyrighted Games are motion picture/audiovisual effects containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

82.     Banilla is the exclusive owner of all exclusive rights under copyright in the Copyrighted Works. Banilla owns valid copyright registrations, issued by the United States Copyright Office, for the Copyrighted Works, specifically the Fusion Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion Link Copyrighted Work, the Fusion Plus Copyrighted Work, the Crumble Cave Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work. *See* **Exhibits 1-11**.

83.     Multiple teams of dedicated in-house personnel, acting within the scope of their employment, created the Copyrighted Works. None of these employees have any contractual rights to ownership of the Copyrighted Works and, as such, the Copyrighted Works constitute works made for hire.

84.     Banilla is the owner of all rights, title, and interest in and to the asserted copyrights underlying the Copyrighted Works.

85.    The Copyrighted Works were registered within five (5) years of the first publication of the Copyrighted Works.

86.    By making the Illicit Games available for use by end users, Defendant has publicly displayed and published pirated, hacked, and/or counterfeit copies of, likely among others, the Fusion Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion Link Copyrighted Work, the Fusion Plus Copyrighted Work, the Crumble Cave Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work, and has done so without Banilla's permission.

87.    As a direct and proximate result of Defendant's infringement of Banilla's Fusion Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion Link Copyrighted Work, the Fusion Plus Copyrighted Work, the Crumble Cave Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work, and pursuant to 17 U.S.C. § 503(a), this Court "may order the impounding . . . (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner; . . . (C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court."

88.    As a direct and proximate result of Defendant's infringement of Banilla's copyrights, Banilla is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c)(1), in an amount of up to $30,000.00, or up to $150,000.00 for a willful infringement, per copyright violation, with respect to Defendant's infringing use of the Fusion Copyrighted Work, the Fusion

23

4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion Link Copyrighted Work, the Fusion Plus Copyrighted Work, the Crumble Cave Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work, or such other amount as may be appropriate under 17 U.S.C. § 504(c). Alternatively, at Banilla's election, pursuant to 17 U.S.C. § 504(b), Banilla shall be entitled to its actual damages, including Defendant's profits from the infringements, as will be proven at trial.

89.    Banilla is entitled to an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 for Defendant's willful infringement.

90.    In all events, Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law. Banilla is thus entitled to impoundment of the Illicit Games, preliminary injunction, and permanent injunction.

**COUNT II**
**Federal Trademark Infringement**
**Pursuant to 15 U.S.C. § 1114**

91.    Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

92.    Banilla owns the U.S. trademark registrations for the Banilla Marks listed in **Exhibits 13-20**.

93.    Defendant's unauthorized use in commerce of the Banilla Marks to promote the sale of goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Game(s)) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendant's goods by creating the false and misleading

24

impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla.

94.     Defendant's use of the Banilla Marks violates 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Banilla's goodwill and reputation as symbolized by the Banilla Marks, for which Banilla has no adequate remedy at law.

95.     Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intent to cause confusion and trade on Banilla's goodwill.

96.     Defendant has caused, and is likely to continue causing, substantial injury to the public and to Banilla, and Banilla is entitled to injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs of this action under 15 U.S.C. §§ 1114, 1116, and 1117.

### COUNT III
### Unfair Methods of Competition Pursuant to 15 U.S.C. § 1125(a)(1)(A)

97.     Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

98.     Banilla owns the U.S. trademark registrations for the Banilla Marks listed in **Exhibits 13-20**.

99.     Banilla is the exclusive distributor of the FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

100.    Defendant's unauthorized use in commerce of the Banilla Marks to promote the sale of goods differing materially from authorized goods sold under the Banilla Marks (e.g., the

Illicit Game(s)) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendant's goods by creating the false and misleading impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla.

101.    Defendant's unauthorized use in commerce of the Banilla Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

102.    Upon information and belief, Defendant has committed the foregoing acts with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intent to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Banilla.

103.    Defendant's conduct as alleged herein constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

104.    Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Banilla, and to its goodwill and reputation, and will continue to both damage Banilla and confuse the public unless enjoined. Banilla has no adequate remedy at law. Banilla is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

105.    Banilla is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs, under 15 U.S.C. §§ 1116 and 1117, as well as pre- and post-judgment interest.

## COUNT IV
### False Designation of Origin Pursuant to 15 U.S.C. § 1125(a)(1)(B)

106.    Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

107.    Banilla owns the U.S. trademark registrations for the Banilla Marks listed in **Exhibits 13-20**.

108.    Banilla is the exclusive distributor of the FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

109.    Defendant's unauthorized use in commerce of the Banilla Marks and/or confusingly similar variations thereof to promote the sale of goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Game(s)) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendant's goods by creating the false and misleading impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla.

110.    Defendant's unauthorized use in commerce of the Banilla Marks and/or confusingly similar variations thereof as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

111.    Upon information and belief, Defendant has committed the foregoing acts with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intent to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Banilla.

112.    Defendant's conduct as alleged herein constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(B).

113.    Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Banilla, and to its goodwill and reputation, and will continue to both damage Banilla

27

and confuse the public unless enjoined. Banilla has no adequate remedy at law. Banilla is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

114.    Banilla is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs, under 15 U.S.C. §§ 1116 and 1117, as well as pre- and post-judgment interest.

## COUNT V
### Common Law Unfair Competition

115.    Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

116.    This claim is for passing off, unfair competition, and deceptive trade practices in violation of the common law of Pennsylvania.

117.    Defendant's actions in passing off his Illicit Games as those authorized, created, licensed, sold, and/or distributed by Banilla are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Illicit Games, thereby causing harm to the reputation and goodwill of Banilla.

118.    Defendant has profited and been unjustly enriched by revenue from the Illicit Game(s) that Defendant would not otherwise have made but for his unlawful conduct.

119.    Banilla has been damaged by Defendant's passing off and unfair or deceptive acts or practices.

120.    As a result of Defendant's passing off and unfair trade practices, Banilla is entitled to an award of its damages, as well as injunctive and equitable relief.

28

### COUNT VI
**Common Law Trademark Infringement**

121. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

122. This claim is for common law trademark infringement against Defendant based on his sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games bearing Banilla's FUSION Mark. Banilla is the owner of all common law rights in and to Banilla's FUSION Mark.

123. Defendant, without authority, has used and is continuing to use Banilla's FUSION Mark, and counterfeit imitations thereof, in connection with the sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games, thereby inducing Defendant's customers and/or clients, and others, to believe, contrary to fact, that the Illicit Games placed/sold by Defendant emanate or originate from Banilla, or that Banilla has approved, permitted, licensed, or otherwise associated itself with Defendant and his Illicit Games. Defendant's acts have damaged, impaired, and diluted the goodwill symbolized by Banilla's FUSION Mark, to Banilla's immediate and irreparable damage.

124. Actual and potential consumers, upon encountering Defendant's Illicit Games, are likely to be confused about the source of origin of the Illicit Games and will likely mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Banilla.

125. Defendant's unauthorized use of the Banilla Marks or counterfeit imitations thereof, which are either identical or confusingly similar to the Banilla Marks, in connection with the advertising and sale of FUSION Games or the Illicit Games as alleged herein, has caused and is likely to continue to cause confusion, mistake, and deceive consumers as to the source,

sponsorship, or affiliation of the Illicit Games, and is likely to cause consumers to believe, contrary to fact, that the Illicit Games are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla, all in violation of Banilla's rights under the common law of Pennsylvania.

126.   Defendant's acts in displaying, offering for sale, selling, and distributing counterfeit versions of Banilla's FUSION Games were committed with full knowledge of Banilla's prior rights in the Banilla Marks, and done willfully, deliberately, and in bad faith.

127.   Defendant's conduct alleged herein constitutes trademark infringement and unfair competition under the common law of Pennsylvania.

128.   Defendant has used the Banilla Marks on his Illicit Games that were not manufactured by or authorized by Banilla, and, therefore, Defendant has deliberately attempted to deceive and mislead consumers.

129.   Defendant, through his continued and unauthorized use of the Banilla Marks, is unfairly benefiting from and misappropriating Banilla's goodwill and reputation, resulting in serious, substantial, and irreparable injury to Banilla and the public.

WHEREFORE, for the reasons stated above, Plaintiff, Banilla Games, Inc., prays to the Court as follows:

1.   For judgment that Defendant, Kalpan Amin:

(a)   Has violated the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

(b)   Has violated Section 32(1) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a);

(c)   Has engaged in unfair competition in violation of the common law of Pennsylvania; and

(d)    Has engaged in trademark infringement in violation of the common law of Pennsylvania.

2.    That an injunction be issued enjoining and restraining Defendant, Kalpan Amin, and each of his officers, agents, employees, attorneys, and all those in active concert or participation with him from:

(a)    Defendant's continued use, publication, and display of the BANILLA GAMES Mark, the BANILLA GAMES (stylized w/bananas) Mark, the CRUMBLE CAVE Mark, the PLUNDERIN' PIRATES Mark, the PLUNDERIN' PIRATES (stylized) Mark, the OFFSHORE ANGLER Mark, the TERROR TAVERN Mark, and the GORGON TREASURES OF GREECE Mark;

(b)    Defendant's continued use, publication, and display of the Copyrighted Works, namely the Fusion Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion Link Copyrighted Work, the Fusion Plus Copyrighted Work, the Crumble Cave Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work;

(c)    Defendant's continued deceptive practices, including marketing or passing off the Illicit Games in interstate commerce; and

(d)    Defendant's use of Banilla's trademarks and intellectual property, including the Illicit Games.

31

3.      For the entry of an order directing Defendant, Kalpan Amin, and all other persons, firms, or corporations in active concert or privity or in participation with Defendant, to deliver up to Banilla all products, advertisements, promotional materials, packaging, and other items in their possession or under their control bearing the Copyrighted Works, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503(b).

4.      For an assessment of actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 17 U.S.C. § 504(c) in an amount not less than $1,650,000.00 for Defendant's willful infringement of the Copyrighted Works, namely the Fusion Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion Link Copyrighted Work, the Fusion Plus Copyrighted Work, the Crumble Cave Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work.

5.      For an assessment of: actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 15 U.S.C. § 1117(c) in an amount not less than $16,000,000.00 for Defendant's willful infringement of the BANILLA GAMES Mark, the BANILLA GAMES (stylized w/bananas) Mark, the CRUMBLE CAVE Mark, the PLUNDERIN' PIRATES Mark, the PLUNDERIN' PIRATES (stylized) Mark, the OFFSHORE ANGLER Mark, the TERROR TAVERN Mark, and the GORGON TREASURES OF GREECE Mark.

32

6.      For an assessment of: (a) damages suffered by Banilla, pursuant to 15 U.S.C. § 1117(a), and (b) an award of Banilla's costs and attorneys' fees to the full extent provided for by 15 U.S.C. § 1117 and 17 U.S.C. § 505.

7.      For a judgment against Defendant in an amount to be determined at trial, but not less than $17,650,000.00 plus interest and costs as allowed by law.

8.      For damages awarded to Banilla as allowed by law for Defendant's willful infringements.

9.      For costs and reasonable attorneys' fees, as allowed by law.

10.     For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Banilla respectfully demands a trial by jury on all claims and issues so triable.


Dated: July 15, 2026                    **WHITEFORD, TAYLOR & PRESTON LLC**

                                        */s/ Bradley P. Lehman*
                                        Bradley P. Lehman
                                        PA Bar No. 319653
                                        600 North King Street, Suite 300
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 353-4144
                                        E-Mail: blehman@whitefordlaw.com

                                        Stephen M. Faraci, Sr. (*Pro Hac Vice* Application Forthcoming)
                                        Robert N. Drewry (*Pro Hac Vice* Application Forthcoming)
                                        WHITEFORD, TAYLOR & PRESTON LLP
                                        1021 E. Cary Street, Suite 2001
                                        Richmond, Virginia 23219
                                        Telephone: (804) 977-3307
                                        E-Mail: sfaraci@whitefordlaw.com
                                                rdrewry@whitefordlaw.com

33